UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**LESLIE A. FARBER, LLC**
33 Plymouth  Street, Suite 204
Montclair, NJ 07042
Ph. (973) 509-8500
email: LFarber@LFarberLaw.com
Attorneys for Defendant, John Doe subscriber assigned IP address 24.191.192.51

| | |
|---|---|
| **MALIBU MEDIA, LLC**, | Hon. Tonianne J. Bongiovanni, U.S.D.J. |
| *Plaintiff,* | Case No. 3:18-cv-14330-AET-TJB |
| vs. | |
| **JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 24.191.192.51**, | CIVIL ACTION |
| | RETURN DATE: February 19, 2019 |
| *Defendant.* | |

---

## DEFENDANT'S <u>REPLY</u> BRIEF IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S SUBPOENA, OR, IN THE ALTERNATIVE, TO PROCEED ANONYMOUSLY AND FOR A PROTECTIVE ORDER

---

LESLIE A. FARBER, ESQ.
     On the Brief

LESLIE A. FARBER, LLC
33 Plymouth Street, Suite 204
Montclair, NJ 07042
Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        DEFENDANT HAS STANDING TO CHALLENGE THE SUBPOENA, WHICH
        WOULD SUBJECT THIS DEFENDANT TO UNDUE BURDEN,
        ANNOYANCE, HARASSMENT AND EXPENSE IN A CASE WHERE
        SUBPOENA IS UNLIKELY TO PROVIDE RELEVANT INFORMATION. . . . 3

            Defendant has standing and faces a substantial burden . . . . . . . . . . . . . . 3

            The Subpoena would subject defendant to undue burden, annoyance,
            harassment and expense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        PLAINTIFF IS NOT WITHOUT A REMEDY IF THE SUBPOENA IS
        QUASHED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            Plaintiff could change its practices and actually litigate individual cases
            like this or notify ISPs of alleged infringing activity . . . . . . . . . . . . . . . . 8

            Plaintiff refused to participate in the Copyright Alert System to reduce the
            incidents of actual copyright infringement. . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**CASES**

Malibu Media LLC v. John Does 1 through 10, No. 2:12-cv-3623 (ECF No. 7) (C.D. Cal. June 27, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Strike 3 Holdings, LLC, v. John Doe subscriber assigned IP address 73.180.154.14, No. 1:18-cv-01425 (ECF No. 5) (D.D.C. Nov. 16, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Third Degree Films v. Does 1-47, No. 12-10761 (ECF No. 31) (D. Mass. Oct. 2, 2012) . . . . . . . 3

Washington v. Thurgood Marshall Acad., 230 F.R.D. 18 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . 3

**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**OTHER SOURCES**

Copyright Alert System https://en.wikipedia.org/wiki/Copyright_Alert_System, (last modified October 4, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Daniel Bean, Entertainment and Internet Providers Launch Copyright Alert System, abcNEWS - TECHNOLOGY REVIEW (Feb. 27, 2013, 6:00a.m.) https://abcnews.go.com/blogs/ technology/2013/02/entertainment-and-internet-providers-launch-copyright-alert-system, (last visited February 10, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Darren Franich, Comcast, AT&T, Cablevision, and other Internet service providers launch Copyright Alert System, (Feb. 26, 2013) http://www.imdb.com/news/ni47909855/ (last visited February 10, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

H.R. Rep. 98-934 (1984), reprinted in 1984 U.S.C.C.A.N. 4655 . . . . . . . . . . . . . . . . . . . . . . . 3

James DeBriyn, Shedding Light on Copyright Trolls:  An Analysis of Mass Copyright Litigation in the Age of Statutory Damages, 19 U.C.L.A. Ent. L. Rev. 79 (2012) . . . . . . . . . . . . . . 3

Joel Lee, How to Use a Fake IP Address and Mask Yourself Online, MAKE USE OF (Oct. 18, 2018), https://www.makeuseof.com/tag/how-to-mask-yourself-online-use-a-fake-ip-address (last visited Feb. 11, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## PRELIMINARY STATEMENT

In addition to the supplemental facts and related arguments in reply to plaintiff's opposition to defendant's Motion to Quash that follow in this reply brief, in the event that defendant's Motion is not granted, defendant would desire to proceed anonymously in this case, which plaintiff consents to in its opposition brief.  But anonymity in court papers in this case is of limited value because, if the subpoena is not quashed, plaintiff undoubtedly will proceed against this defendant who will be forced to defend and explain to family and friends (and perhaps her or his employer) why defendant is involved in this litigation and what this case is about.

1

## STATEMENT OF FACTS

In its brief opposing defendant's Motion, plaintiff attempts to distinguish itself from other pornographers by talking about high production and talent costs, reputation in the industry, among other things.  While that may or may not be true, the films plaintiff claims that defendant wrongfully downloaded in this case include titles such as "Caprice Swaps Cocks," "Everybody Plays Three Ways," and "Triple Blonde Fantasy."  *See* Exhibit A annexed to plaintiff's Complaint. (ECF Doc. 1, 1-1).

Plaintiff alleges in its Complaint that the downloads took place over several months.  *See* Exhibit A annexed to plaintiff's Complaint (ECF Doc. 1, 1-1).

2

**LEGAL ARGUMENT**

<u>POINT I</u>

**DEFENDANT HAS STANDING TO CHALLENGE THE SUBPOENA, WHICH WOULD SUBJECT THIS DEFENDANT TO UNDUE BURDEN, ANNOYANCE, HARASSMENT AND EXPENSE IN A CASE WHERE SUBPOENA IS UNLIKELY TO PROVIDE RELEVANT INFORMATION.**

A.    <u>Defendant has standing and faces a substantial burden.</u>

Contrary to plaintiff's arguments in its brief in opposition to this Motion, a party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena. *See Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 21 (D.D.C. 2005). Defendant in this case has a personal interest in the personal details sought. Congress recognized in enacting the Cable Franchise Policy and Communications Act that cable or internet subscribers have a **privacy interest** in their personally identifying information retained by ISPs. *See* H.R. Rep. 98-934 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655 at *79 ("The Congress is recognizing a right of privacy in personally identifying information collected and held by a cable company . . ."). Defendant's initial brief in support of her, his or its motion points to several decisions acknowledging defendant's privacy interest in the information sought by plaintiff's subpoena.

Also contrary to plaintiff's arguments, this defendant does face a substantial burden as delineated in the plethora of cases cited in defendant's initial brief in support of this Motion, many of which describe the pattern of typical copyright trolls[1] such as the plaintiff in the use of

---

[1] *Third Degree Films v. Does 1-47,* No. 12-10761 (ECF No. 31 at 1) (D. Mass. Oct. 2, 2012)
    A copyright troll is an owner of a valid copyright who brings an infringement action "not to be made whole, but rather as a primary or supplemental revenue stream."
*Id.* at n. 1 (citing James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass*
                                                                          (continued...)

extortion and coercive settlement demands, the low probability that the sought-after information actually would identify the correct defendant(s) (if any), and where the plaintiff has no interest in actually bringing these cases to trial. *See* Defendant's brief in support of this Motion at 3-4, 10-19.

Plaintiff is aware that the tremendous financial burden to defend one of these cases. Thus, even if there is limited relevance to the information seeks, plaintiff undoubtedly will amend and proceed against defendant, who then must continue to pay for legal counsel throughout the pleading, discovery, and eventual summary judgment phases of the case, regardless of whether there is any evidence whatsoever of infringement.

B.    The Subpoena would subject defendant to undue burden, annoyance, harassment and expense.

Contrary to plaintiff's claims that nearly court considering the defendant's privacy interest and undue burden in revealing his or her of its identify has found those interests insufficient, defendant's initial brief includes several court decisions finding otherwise which not be reiterated here. In addition, the court described the burden in *Malibu Media LLC v. John Does 1 through 10,* No. 2:12-cv-3623 (ECF No. 7 at 4) (C.D. Cal. June 27, 2012):

> To save himself from embarrassment, even if he is not the infringer, the subscriber will very likely pay the settlement price. And if the subscriber is a business, it will likely pay the settlement to save itself from the hassle and cost of complying with discovery B even though one of its customers or employees is the actual infringer.

Because individual BitTorrent file pieces are worthless by themselves and can never be reconstructed into a copyrighted work, the court in that case required Malibu Media to show

---

[1] (...continued)
*Copyright Litigation in the Age of Statutory Damages,* 19 U.C.L.A. ENT. L. REV. 79, 86 (2012)).

4

which defendant(s) in the "swarm" transmitted a full copy of a copyrighted work, which Malibu

Media apparently could not do.  *Id.* at 5.  "The federal courts are not cogs in a plaintiff's

copyright-enforcement business model.  The Court will not idly watch what is essentially an

extortion scheme, for a case that plaintiff has no intention of bringing to trial."  *Id.* at 6.

Moreover, as noted by Judge Lamberth in *Strike 3 Holdings, LLC, v. John Doe*

*subscriber assigned IP address 73.180.154.14,* No. 1:18-cv-01425 (ECF No. 5) (D.D.C.

Nov. 16, 2018), "[s]imply put, inferring the person who pays the cable bill illegally downloaded

a specific file is even less trustworthy than inferring they watched a specific TV show.  But in

many cases, the method is enough to force the Internet service provider (ISP) to unmask the IP

address's subscriber.  And once the ISP outs the subscriber, permitting them to be served as the

defendant, any future Google search of their name will turn-up associations with the"

pornographic films recited in plaintiff's complaint.   Therefore, a plaintiff similar to Malibu

Media

> cannot overcome defendant's weighty privacy expectation.  Imagine having your
> name and reputation publicly – and permanently – connected to [film names like
> "Caprice Swaps Cocks," "Everybody Plays Three Ways," and "Triple Blonde
> Fantasy"]. (Google them at your own risk.)  How would an improperly accused
> defendant's spouse react'?  His (or her) boss?  The head of the local neighborhood
> watch? The risks of a false accusation are real; the consequences are hard to
> overstate and even harder to undo.

*Id.* at 6.

C.     Plaintiff's subpoena is not likely to identify the alleged infringer.

Even though, in some cases, an internet account subscriber might have some relevant

information that might lead to who an actual infringer might be, those internet account

subscribers are named as defendant in this cases by their IP address, as in this case.  This is

despite the high risk of false positives, and high risk the actual infringer (if there actually is one)

5

is some third person in the subscriber who somehow got access to defendant's internet

connection, whether that be someone in defendant's business or household, or a family guest or

customer, or a neighbor, or a stranger driving by who may have hacked or leeched this

defendant's internet access.  *See* Defendant's Brief in support of this Motion at 6-7, 17-18, 22-

24.  As Judge Lamberth noted in the D.C. District case cited, *supra*, a plaintiff like Malibu

Media

> could not withstand a 12(b)(6) motion in this case without resorting to far more
> intensive discovery machinations sufficiently establishing defendant did the
> infringing – examining physical evidence (at least the computers, smartphones, and
> tablets of anyone in the owner's house, as well as any neighbor or houseguest who
> shared the Internet), and perhaps even interrogatories, document requests, or
> depositions.  [Malibu Media's] requested subpoena thus will  not – and may never
> – identify a defendant who could be sued.

*Id.*

Plaintiff, in its brief opposing defendant's motion (at 14) claims that spoofing an IP

address cannot indicate a false IP address of the infringer.  Anyone familiar with proxy and VPN

servers and inexpensive or free software that show the world a fake IP address for anyone who

wants it knows that this simply is not true.  Joel Lee, *How to Use a Fake IP Address and Mask

Yourself Online,* MAKE USE OF (Oct. 18, 2018), https://www.makeuseof.com/tag/how-to-mask-

yourself-online-use-a-fake-ip-address (last visited Feb. 11, 2019)

Thus, since this defendant has a privacy right in the personal information sought, and the

information sought is not likely to lead to the identity of the actual infringer (if any) or any other

discoverable evidence, defendant will incur a tremendous financial expense to defend the case,

divulging it to plaintiff most likely would subject defendant to undue annoyance, harassment,

and burden.  On balance, where there is a tremendous burden on defendant here, and where the

information sought from plaintiff's subpoena is of very limited or no value with a risk of providing misleading information, the burden outweighs the risk.

Accordingly, defendant has standing to Quash plaintiff's Subpoena served on Optimum Online (CSC Holdings -Altice USA) in this case.

<u>POINT II</u>

**PLAINTIFF IS NOT WITHOUT A REMEDY IF THE SUBPOENA IS QUASHED.**

A. <u>Plaintiff could change its practices and actually litigate individual cases like this or notify ISPs of alleged infringing activity.</u>

As noted above and in defendant's initial brief in support of defendant's Motion to Quash, besides the plaintiff's proof problems, one of the problems courts and innocent defendants have had with these cases is that pornographers like Malibu Media in BitTorrent claims have shown repeatedly that they are not actually interested in prosecuting cases through discovery and rest of the litigation process, but pursue a business model of exacting quick settlements for a fraction of the would-be defendants' potential exposure in the cases.

If plaintiffs such as Malibu Media in this case would file, subpoena and actually litigate these as if they are going to trial, many of these problems would be eliminated and fairer to the defendants, and prove to be less of a burden on the courts.  Plaintiffs like Malibu Media typically wait for the downloads and potential damages from the John Does in a swarm to accumulate before they take any court action, so as to maximize the monetary return from each John Doe.  In this case, plaintiff watched the alleged downloads occur for months, accumulating potential damages from six (6) films and waiting  before taking any action.  Plaintiff also could have notified Optimum Online (CSC Holdings -Altice USA) that downloads of its copyrighted works were coming from a particular IP address because, although that might have stopped the infringing activity, it does not generate income.  But Malibu Media failed to do that in this case or any other case because it would defeat their business model.

8

B.    <u>Plaintiff refused to participate in the Copyright Alert System to reduce the incidents of actual copyright infringement</u>.

Many entertainment industry groups and major internet service providers (ISPs), such as Optimum Online (CSC Holdings -Altice USA) (formerly known as Cablevision), teamed up to create the Copyright Alert System.  The system has been used pre-litigation to educate and dissuade consumers from participating in illegal methods of sharing copyrighted materials online.  *See* Daniel Bean, *Entertainment and Internet Providers Launch Copyright Alert System*, abcNEWS - TECHNOLOGY REVIEW (Feb. 27, 2013, 6:00a.m.) https://abcnews.go.com/blogs/technology/2013/02/entertainment-and-internet-providers-launch-copyright-alert-system, (last visited February 10, 2019); *see also* Copyright Alert System <u>https://en.wikipedia.org/wiki/Copyright_Alert_System</u>, (last modified October 4, 2018).

Optimum Online agreed to participate in this 6-strike system whereby copyright owners send notices of alleged copyright infringement to participating Internet Service Providers, who then forward these notices to their Subscribers in the form of Copyright Alerts.  Before initiating litigation, the copyright holder sends up to six ( 6) alerts of increasing degree of seriousness to the internet subscribers.  The first two are "Educational Alerts," then two "Acknowledgment" Alerts that require a response from the subscriber, and finally two "Mitigation" Alerts that impose minor consequences (such as reducing download speeds) to emphasize the seriousness of the problem.  The Educational Alert includes links to authorized, legal ways to find the desired copyrighted content.  *See* Darren Franich, *Comcast, AT&T, Cablevision, and other Internet service providers launch Copyright Alert System,* (Feb. 26, 2013) <u>http://www.imdb.com/news/ni47909855/</u> (last visited February 10, 2019).

By using such a system, copyright owners can protect their intellectual property and usually can avoid ensnaring innocent internet subscribers because it is likely that innocent subscribers who receive such notices will investigate who might be using their internet connection for improper purposes and/or take appropriate action to make their connection more secure.  Although older, actual copyright violations may not be remedied with this system, but if the holders of adult film industry copyrights are serious about actually protecting their copyright, rather than using litigation simply as a revenue stream, they will participate in and work to expand this system as necessary.

As such, plaintiff currently has or had remedies by litigating individual cases and preventing future copyright violations as described above, and/or notifying the ISP of alleged infringing behavior.  But plaintiff chooses not to do that and, thus, helps create a problem of its own making.

Accordingly, defendant's Motion to Quash should be granted.

## CONCLUSION

Defendant's Motion to Quash plaintiff's subpoena to Charter Communication for defendant's name and address should be quashed for all of the foregoing reasons and those contained in defendant's initial moving papers.

Respectfully submitted,
LESLIE A. FARBER, LLC

/s/ Leslie A. Farber

Dated: February 11, 2019          By:    Leslie A. Farber
                                         eMail: LFarber@LFarberLaw.com